Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-221-ELG |
| | ) | (Chapter 11) |
| 1616 27TH STREET FLATS L.L.C. | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION FOR DERIVATIVE STANDING**

Comes now WCP Fund I LLC ("WCP"), by and through undersigned counsel, and moves this Honorable Court for derivative standing to bring suit against Richard Cunningham ("Mr. Cunningham") and such other insiders of 1616 27th Street Flats L.L.C. (the "Debtor" or "12SFL") as the facts of this case may so warrant (the "Derivative Defendants"), on behalf of the Debtor, and in support thereof states as follows:

**I.    Introduction**

The Debtor owes WCP at least $3,051,944.08 from the settlement of racketeering litigation centered on the fraudulent conduct of Mr. Cunningham. For this palpable obligation, 12SFL assuredly has a meritorious claim against Mr. Cunningham for contribution; but for the racketeering conduct of Mr. Cunningham and others, the Debtor would not find itself in this economically precarious position. As this case progresses, pursuing that claim—and endeavoring to collect from Mr. Cunningham and his joint tortfeasors—will be integral to realizing a return to

1

general unsecured creditors. And insofar as the Debtor has now consented to stay relief, to permit another creditor to foreclose 12SFL's eponymous asset, these litigation rights may be the only remaining asset of the Debtor's estate from which a return can be realized.

Yet, perhaps unsurprisingly, the Debtor has shown no inclination to pursue this claim against its own member. Nor can Mr. Cunningham—the manager who signed the petition herein on 12SFL's behalf, DE #1 at p. 4—be reasonably expected to launch litigation against himself. Equally, the Debtor's only other equity holder—Mr. Cunningham's mother—seems unlikely to commandeer this case for purposes of liquidating a claim against her son.

WCP, as the single largest general unsecured creditor herein, is prepared to take charge of the at-issue litigation rights (the "Litigation Rights"), for the benefit of all creditors. WCP is, too, prepared to front the legal fees and expenses attendant to such litigation, agreeing to be reimbursed out of a recovery if—and only if—a recovery is realized.

For these reasons, and as extrapolated upon *infra*, this is the rare case where derivative standing is needed to ensure a proper return to creditors.

II.     **Argument: Derivative Standing is Appropriate**

Mr. Cunningham has traversed an unfortunate path of economic despair through his forging of documents for presentation to lenders. For these sins, the Debtor owes WCP more than $3 million. And it is only appropriate that he be made to answer for such through this bankruptcy, to the benefit of *all* creditors—not merely WCP.

The United States District Court for the District of Columbia has written approvingly of the bestowment of derivative standing in bankruptcy proceedings. *See, e.g.*, *The Plan Comm. v. PricewaterhouseCoopers, LLP*, 335 B.R. 234, 242 (D.D.C. 2005) ("Derivative standing allows parties 'to pursue valuable actions when the [party with direct standing or express statutory

2

authorization to have standing] unreasonably refus[es]' to bring suit.") (quoting *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003)).

This Honorable Court, in turn, has indicated that in petitioning for derivative standing, "the creditor or committee is required to show both that there is a colorable claim and that the trustee has unjustifiably refused to prosecute the claim." *In re Yelverton*, 2012 WL 1229752, at *2 (Bankr. D.D.C. Apr. 12, 2012) (citing *In re McGuirk*, 414 B.R. 878, 880 (Bankr. N.D. Ga. 2009); *In re Cooper*, 405 B.R. 801 (Bankr. N.D. Tex. 2009)).

As recently as 2013, this Honorable Court has conferred derivative standing to a private creditor seeking to liquidate causes of action, against insiders of a debtor, for the benefit of all creditors. *See In re Hightower*, Case No. 13-646-SMT (Bankr. D.D.C. 2013) at DE #122. There, the debtor appeared to have conveyed overseas property, without realizing reasonably equivalent value, on the eve of seeking bankruptcy protection. *Id.* at DE #98. A trustee was unwilling to pursue an avoidance action, but a creditor stepped forward and offered to do so. *Id.* The ensuing litigation ultimately resulted in entry of a $325,000.00 judgment against the debtor's son (who, somewhat confusingly, shared a name with the debtor). *See Hightower v. Hightower*, Case No. 12-10023-SMT, at DE #69.

In *Hightower*, temporal exigency surrounded the filing of a derivative suit, insofar as the applicable statute of limitations was on the verge of expiring. And, as such, an adversary proceeding was docketed of even date with a motion for derivative standing. *Id.* at DE #1; *In re Hightower*, Case No. 13-646-SMT (Bankr. D.D.C. 2013) at DE #98. Here, no such exigency exists; the Debtor has time yet to pursue the Litigation Rights. 11 U.S.C. § 108(a).

3

The question, thusly, is twofold: (i) whether there exists a "colorable claim" against Mr. Cunningham (and/or others); and (ii) whether the debtor-in-possession "has unjustifiably refused to prosecute the claim." *In re Yelverton*, 2012 WL 1229752, at *2. Both are answered handily in the affirmative.

The claim to be pursued is amply colorable. Under District of Columbia law, an individual is liable for common law contribution upon the claim of a joint tortfeasor. *See, e.g.*, *D.C. v. Washington Hosp. Ctr.*, 722 A.2d 332, 336 (D.C. 1998) ("Contribution is one of several theories used to apportion damages among tortfeasors to an injured party. In this jurisdiction, the law pertaining to the right of contribution among joint tortfeasors has been established by case precedent rather than by statute.") (citing *Lamphier v. Washington Hosp. Ctr.*, 524 A.2d 729, 733 (D.C. 1987)).[1] Indeed, "[c]ontribution is a right existing among joint tort-feasors based upon the theory that, as each tort-feasor was at fault in bringing about the injury to the innocent party, then in justice each tort-feasor should share his part in the burden of making the injured party whole again." *Martello v. Hawley*, 300 F.2d 721, 723 (D.C. Cir. 1962) (citing *George's Radio, Inc. v. Capital Transit Co.*, 126 F.2d 219 (D.C. Cir. 1942)).

Here, the Debtor found itself in the throes of a racketeering suit because Mr. Cunningham forged myriad documents as part of a scheme to defraud lenders. *See WCP Fund I LLC, et al. v. Cunningham, et al.*, Case No. 23-10012-ELG (Bankr. D.D.C. 2023) at DE #1, *passim*. To settle that litigation, 12SFL agreed, *inter alia*, to execute a $3 million promissory note, accruing interest at the rate of 2% per annum, in favor of WCP (with the Debtor's co-defendants therein also either executing—or guaranteeing—the same note). *See In re 1716 R Street Flats LLC*, Case No. 23-17-

---

[1] This is not a typo; Washington Hospital Center appears to have been the defendant in each of the hallmark cases addressing contribution liability in the District of Columbia.

ELG (Bankr. D.D.C. 2023) at DE #126. The settlement was ultimately approved by this Honorable Court, *Id*. at DE #170, and the Debtor is thusly obligated to WCP in the sum of $3 million plus accruing interest.

To be sure, the Debtor would not have been sued for racketeering in the first instance—let alone been faced with the gnarly prospect of compromising the claim in exchange for executing a $3 million promissory note—if Mr. Cunningham had not habitually forged documents so as to procure loans on fraudulent foundations. Or, in classic tort parlance, the Debtor would not be obligated on the promissory note *but for* the actions of Mr. Cunningham. And, under *Martello* and its progeny, the Debtor thusly has a contribution claim against Mr. Cunningham (as well as against any other joint tortfeasors who also created the foundation for the litigation that beget the settlement obligation).

12SFL may well also have claims against Mr. Cunningham for breach of fiduciary duty, violation of the implied covenant of good faith and fair dealing, and fraud, in addition to other theories of liability that factual investigation will permit to be developed through litigation. And, as noted *passim*, such claims may well also extend to Mr. Cunningham's joint tortfeasors. But, one way or another, it is clear the Debtor has litigation rights.

Which leads to the second rigor under *Yelverton*: whether the Debtor has unjustifiably refused to pursue these claims. On June 21, 2024, undersigned counsel wrote to counsel of record for the Debtor, noting the existence of these claims and urging some action be taken. *See* Letter of June 21, 2024, attached hereto as Exhibit A. Recognizing that Mr. Cunningham, as the Debtor's representative, may be disinclined to bring suit against himself, the missive asked for a response on or before July 5, 2024. The Debtor's counsel furnished a thoughtful and timely response on July 1, 2024, suggesting this case "adds no utility" to the Debtor's already-extant bankruptcy estate

5

and noting the rights of WCP to file an involuntary bankruptcy petition against Mr. Cunningham. *See* Letter of July 1, 2024, attached hereto as Exhibit B.

While the letter from the Debtor's counsel is well-taken, the core contentions therein are also misplaced. The lone authority cited for the proposition that this case is a nullity is the matter of *In re Peaks*, an unreported 2007 opinion in which this Honorable Court dismissed an inadvertent bankruptcy filing. *In re Peaks*, 2007 Bankr. LEXIS 693, at *1 (Bankr. D.D.C. Mar. 7, 2007). The *Peaks* case concerned a Chapter 7 filing that was docketed in literal error, with the debtor therein seemingly beating counsel to the clerk's office and, as a result of some miscommunication, two identical cases being filed in rapid succession. *Id*. Perhaps more importantly, though, *Peaks* also expressly forbears from addressing the permissibility of a single debtor having concurrent bankruptcy estates: "The court need not address whether, upon dismissing any new case filed while another case is still pending, the court may in appropriate circumstances be required not to dismiss it as a nullity." *Id.* at *3, n. 3.

To the extent the Debtor wishes to file a motion to dismiss this case, such is certainly the Debtor's prerogative. Yet no such motion has been docketed as of present and it is accordingly premature to assess the merits, *vel non*, of any such request. WCP does necessarily observe, however, that the so-called "single estate rule" does not appear to have ever been adopted in this judicial circuit, though the notion has been roundly rejected by Judge Tice in a neighboring district. *See, e.g.*, *In re Bullock*, 206 B.R. 389, 393 (Bankr. E.D. Va. 1997) ("Notwithstanding the force with which the so-called single estate rule has been stated, its content simply has no foundation in either the language or the legislative history of the Code.").

In the interim, however, the Debtor has consented to relief from the automatic stay set forth in Section 362 of Title 11 of the United States Code, so as to permit foreclosure of 12SFL's lone

6

real estate asset. DE #8. And it is accordingly altogether unclear what—if any—assets with which the Debtor will soon be left, capable of forming the foundation of a plan of reorganization herein. This is not a case where the Debtor has any realistic prospect of cobbling together a 100% plan while strategically looking past claims against insiders; this is a case where it is difficult to fathom what—if any—plan could be proposed in good faith (much less confirmed) if the claims against insiders are not properly pursued. And, as discussed above, it is quite clear the 12SFL will not itself be pursuing those claims.

### III. Conclusion

Section 1112 of the Bankruptcy Code furnishes numerous grounds upon which a Chapter 11 case may be converted to Chapter 7 and entrusted to a trustee. Similarly, Section 1104 of the Bankruptcy Code provides a mechanism through which a Chapter 11 trustee may be appointed. Both are enormously useful provisions (and both may well prove applicable to this case), but neither confronts the frequent tension between a cash-strapped estate and the resources needed to pursue meaningful litigation. Nor, quite notably, does either provision expressly provide that a debtor's failure to pursue such litigation may constitute a triggering event (though each allowance does contain subjective language that, certainly, may well be triggered by such a failure).

In situations such as this, derivative standing is an important—even if scantly-utilized—avenue. Where a creditor, such as WCP, is willing to spearhead efforts on behalf of the estate, such is a windfall to *all* creditors. This is not a champertous regiment through which a debtor must part with valuable rights, or through which a third party looks to stir up strife for solely its own benefit; this is a well-tested (even if rarely-invoked) mechanism through which a creditor can aid in the reorganization process by doing that which a debtor will not.

The facts of this case invite derivative standing quite convincingly. The Litigation Rights are valuable and the Debtor is not soon going to pursue them. The ensuing dilemma is easily solved by allowing WCP to do so, derivatively, for the benefit of the estate.

WHEREFORE, WCP respectfully prays this Honorable Court (i) grant WCP derivative standing, to bring an adversary proceeding against one or more insiders of the Debtor, and to pursue such adversary proceeding in accord with the best judgment of WCP, albeit conditioning any compromise thereof upon satisfaction of the rigors of Federal Rule of Bankruptcy Procedure 9019; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 6, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all parties registered to receive service thereby.

/s/ Maurice B. VerStandig
Maurice B. VerStandig